**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**CINCINNATI DIVISION**

| | |
|---|---|
| **JENNIFER CREWS**<br>5271 East River Road<br>Fairfield, OH 45014-2425<br><br>and<br><br>**SHAWN CREWS**<br>5271 East River Road<br>Fairfield, OH 45014-2425<br><br>       Plaintiffs,<br><br>  v.<br><br>**PHH MORTGAGE CORPORATION**<br>**d/b/a PHH MORTGAGE SERVICING**,<br>c/o Corporation Service Company<br>50 W. Broad St., Ste. 1330<br>Columbus, OH 43215<br><br>       Defendant. | Civil Case No.<br><br><br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Jennifer Crews and Shawn Crews through counsel, states as follows for her *Complaint for Damages* (the "Complaint") against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing:

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiffs Jennifer Crews ("Jennifer") and Shawn Crews ("Shawn") (collectively, "Plaintiffs" or the "Crewses") are the owners of the real property and improvements located

thereupon located at and commonly known as 5271 East River Road, Fairfield, OH 45014-2425 (the "Home").

2.     Plaintiffs currently occupy and maintain the Home as their primary, principal residence and have maintained the Home as such for all times relevant to the causes of action pleaded in this Complaint.

3.     On March 22, 2005, Jennifer executed a promissory note in the amount of $145,200.00 (the "Note") and the Crewses both signed a mortgage on the Home purportedly securing the Note (the "Mortgage") (collectively, the "Loan"). *See*, a copy of the Loan, attached as **<u>Exhibit 1</u>**.

4.     Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing ("Defendant" or "PHH") is a foreign corporation registered to do business in the State of Ohio, with its corporate headquarters located at 1 Mortgage Way, Mount Laurel, NJ 08054.

5.     PHH is the current servicer of the Loan and has serviced the Loan at all times relevant to the causes of action pleaded in this Complaint.

6.     PHH services the Loan on behalf of the purported assignee of the Loan, non-Party U.S. Bank National Association, as Indenture Trustee, Successor in Interest to Wachovia Bank National Association, as Indenture Trustee for Aegis Asset Backed Securities Trust 2005-2, Mortgage Backed Notes ("USBNA") and has acted with its authority or otherwise on its behalf in relation to the Loan at all times relevant to the causes of action pleaded in this Complaint.

7.     Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate

Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA), and the Electronic Funds Transfers Act, 15 U.S.C. § 1693, *et seq*. (the "EFTA").

8. This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

9. Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

### SUMMARY OF CAUSES OF ACTION

10. Plaintiffs file this action in substantial part to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq*. ("Regulation X").

11. In January 2013, the CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

13. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

14.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

15.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

16.     PHH is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4).

17.     PHH is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

18.     Jennifer Crews asserts a claim for relief against PHH for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

19.     Jennifer Crews has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10696, 10739 (emphasis added).

20. The Crewses further assert a state law statutory claim for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

21. The Crewses are each a "buyer" as defined by R.C.1322.01(H), as each is an individual whose mortgage is serviced by a mortgage servicer, PHH.

22. PHH is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(AA).

23. PHH is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

## STATEMENT OF FACTS

24. The Crewses, suffering from a financial setback, became delinquent on their obligations under the Loan.

25. On or about May 11, 2021, USBNA initiated foreclosure proceedings against the Crewses in the Court of Common Pleas for Butler County, Ohio, Case No. CV 2021 05 0648 (the "Foreclosure").

26. PHH is not a party to the Foreclosure.

27. On or about July 7, 2021, USBNA moved for default judgment against the Crewses in the Foreclosure.

28. A judgment was issued against the Crewses in the Foreclosure on or about July 12, 2021.

29.     Prior to the judgment being issued on July 12, 2021, the Crewses sought loss mitigation assistance from PHH and PHH received financial information from the Crewses.

30.     On or about July 21, 2021, PHH sent correspondence to Jennifer stating that she was approved to enter into a Streamline Modification Trial Plan consisting of three (3) payments of $899.92 in and for the months of September through November 2021 (the "Trial Plan"). *See*, a partial copy of the Trial Plan, attached as **Exhibit 2**.

31.     Per the terms of the Trial Plan, Jennifer was required to remit the payments due thereunder before the end of each month in which each such payment was due.

32.     Jennifer timely executed and returned the Mortgage Assistance Acceptance Form included with the Trial Plan on or about August 6, 2021. *See*, **Exhibit 2**.

33.     On September 29, 2021, the Crewses had a telephonic conversation with PHH during which the Crewses provided authorization to remit the payment due and owing under the Trial Plan through a Chime account (the "Chime Account").

34.     During the September 29, 2021 conversation, the Crewses provided all of the information needed to effectuate the Trial Plan payment including the correct account number for the Chime Account.

35.     Despite the Crewses properly providing all the necessary information to effectuate the Trial Plan payment, one of PHH's representatives entered the incorrect information for the Chime Account while processing the payment which caused the payment to be returned and for the Trial Plan and the modification review to be closed.

36.     Upon learning that the Trial Plan payment was unsuccessful and that PHH was denying the Crewses for a loan modification, the Crewses contacted PHH claiming that the error in the attempted Trial Plan payment on September 29, 2021 was the fault of PHH and requesting that the modification denial be reversed.

37.     PHH sent correspondence to the Crewses, dated October 28, 2021, stating, in pertinent part:

> Thank you for the recent communication regarding [the Loan] in which you stated that our representative entered incorrect account number [*sic*] while processing the payment, due to which the payment was returned and modification review was closed. Therefore, you requested to reverse the modification denial and accept the payment.
>
> We reviewed the telephone conversation dated September 29, 2021, and *determined that our representative entered incorrect bank account number [*sic*] while processing the payment.* We apologize for the inconvenience caused.
>
> To reverse the modification denial and to roll the due date till December 1, 2021, we require the payment of $2,699.76. This payment must be received by us on or before November 30, 2021.

*See*, a copy of the October 28, 2021 correspondence, attached as **Exhibit 3**.

38.     On November 1, 2021, USBNA through Clunk, Hoose Co., LPA ("Clunk"), filed a Motion to Vacate Judgment in the Foreclosure stating USBNA "has received financial documentation for loss mitigation from Defendant just prior to judgment being granted on July 12, 2021, and therefore, is moving the Court to vacate judgment entered for [USBNA] on July 23, 2021 pursuant to the provisions of the [CFPB's] regulations."

39.    The Foreclosure court vacated the judgment against the Crewses on November 2, 2021.

40.    Despite the Crewses now having until November 30, 2021 to remit a payment of $2,699.76 to effectuate the Trial Plan per PHH, on or about November 11, 2021, USBNA, through Clunk filed a renewed Motion for Default Judgment against the Crewses.

41.    The Foreclosure court granted judgment against the Crewses on November 16, 2021.

42.    In compliance with the instructions in the October 28, 2021 correspondence, on or about November 26, 2021, the Crewses made a payment in the amount of $2,700.00 from their personal checking account to PHH through PNC Bank's Online Banking Bill Center.

43.    PNC Bank ("PNC") sent correspondence dated December 21, 2021 stating that PHH refused the November 26, 2021 payment and that the payment was credited to the Crewses' checking account on December 7, 2021. *See*, correspondence from PNC, attached as **Exhibit 4**.

44.    In short, the Crewses dutifully attempted to remit their first timely payment under the terms of the Trial Plan, which was unsuccessful due to errors on the part of PHH, and when the Crewses attempted to remit the payments due under the Trial Plan once PHH acknowledged their errors, PHH then refused to accept such payment.

45.    Despite the Crewses dutifully performing on their obligations under the terms of the Trial Plan and following PHH's instructions after PHH failed to properly process the Trial Plan payment on September 29, 2021, judgment was entered against the Crewses on two (2) separate occasions with no intervention on the part of PHH.

46.     The judgment in the Foreclosure remains active and the Crewses are in fear of the imminent scheduling of a foreclosure sale of their Home.

### IMPACT AND DAMAGES

47.     Had PHH acted appropriately, the Crewes would have fulfilled their obligations under the Trial Plan and the Loan would have been subsequently modified through a permanent loan modification agreement thereby curing the alleged default on the Loan and leading to a dismissal of the Foreclosure.

48.     Due to PHH's actions, the Crewses have unnecessarily been deprived of their opportunity to obtain a permanent modification through their compliance with the Trial Plan which would have saved their Home from foreclosure judgment and sale.

49.     Defendants' improper actions have further caused the Crewses to suffer from other damages including:

a.      The time loss of funds in the amount of $2,700.00 from November 26, 2021 until December 7, 2021;

b.      Loss of time and money for continued defense of the Foreclosure which would not still be pending but for PHH's actions in mishandling the payment and loss mitigation processes concerning the Loan in violation of RESPA, Regulation X, the EFTA, the RMLA, and mortgage servicing guidelines;

c.      Legal fees, costs, and expenses incurred in defense of the Foreclosure since PHH's wrongful conduct;

d.    Improper fees and charges imposed on the Loan due to the unnecessarily continued Foreclosure for which Jennifer will likely become personally obligated should she eventually obtain a loan modification or which otherwise negatively impact any equity in the Home to which the Crewses are entitled;

e.    Continued harm to the Crewses' credit through the issuance of two (2) wrongful judgments in the Foreclosure and an unnecessary continuation of the delinquency on the Loan which would have been cured but for PHH's wrongful conduct;

f.    Delay in the rehabilitation of the Crewses' credit as the satisfaction of the Trial Plan and a subsequent permanent modification would have afforded them the opportunity to begin the process of rehabilitating their credit standing; and,

g.    Severe emotional distress driven by PHH's actions and by the tangible fear that PHH's refusal to properly handle the payment and loss mitigation processes related to the Loan will result in the imminent loss of their Home to foreclosure sale, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress above and beyond the emotional distress caused by the Foreclosure from which she was suffering prior to the conduct alleged in this complaint.

## PATTERN AND PRACTICE OF PHH'S
## VIOLATIONS OF RESPA AND REGULATION X

50.     PHH's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of PHH's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

51.     As of the filing of this Complaint, consumers, nationally, have lodged:

a.      Seven Hundred Seventy-Six (776) consumer complaints against PHH specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages;

b.      Seven Hundred Forty-Four (744) consumer complaints against PHH specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages; and,

c.      Three Hundred Four (304) consumer complaints against PHH specifically concerning the issue identified on the CFPB's consumer complaint database as "trouble during payment process" related to mortgages.

Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (accessible at http://www.consumerfinance.gov/data-research/consumer-complaints/).

52.     Plaintiff has reviewed the CFPB's consumer complaint database and has identified other similar RESPA violations by PHH as alleged by other consumers. Plaintiff has reviewed ten

(10) consumer complaints attached hereto and identified as **Composite Exhibit 5**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct showing that Rushmore has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

### COUNT ONE: VIOLATIONS OF 12 C.F.R. § 1024.41(g) AND 12 U.S.C. § 2605(k)

53.     The Crewses restate and incorporate all of their statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

54.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

55.     A complete loss mitigation application is "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower."

56.     If a borrower submits a complete loss mitigation application more than thirty-seven (37) days prior to a foreclosure sale, then a servicer is prohibited from moving for judgment unless:

> (1) The servicer has sent written notice pursuant to paragraph (c)(1)(ii), stating that the borrower is not eligible for any loss mitigation options and the borrower has not requested an appeal, or the borrower's appeal has been denied;
> (2) The borrower rejects all loss mitigation options offered by the servicer; or,
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g).

57.     Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(b)(3) provides that "If no foreclosure sale has been scheduled as of the date that a complete loss

mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

58.     The Official CFPB Interpretations to 12 C.F.R. § 1024.41(g) provide, in relevant part:

> 1.  Dispositive motion. The ***prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment***, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale.
>
> [...]
>
> 3.  Interaction with foreclosure counsel. The prohibitions in § 1024.41(g) against moving for judgment or order of sale or conducting a sale may require a servicer to act through foreclosure counsel retained by the servicer in a foreclosure proceeding. ***If a servicer has received a complete loss mitigation application, the servicer must instruct counsel promptly not to make a dispositive motion for foreclosure judgment or order of sale***; where such a dispositive motion is pending, to avoid a ruling on the motion or issuance of an order of sale; and, where a sale is scheduled, to prevent conduct of a foreclosure sale, unless one of the conditions in § 1024.41(g)(1) through (3) is met. A servicer is not relieved of its obligations because foreclosure counsel's actions or inaction caused a violation.

Supplement I to Part 1024 (emphasis added).

59.     To date, no foreclosure sale of the Home has been scheduled.

60.     Upon Jennifer's execution of the Trial Plan on or about August 6, 2021, or otherwise upon the Crewses properly providing all the necessary information to effectuate the Trial Plan payment on or about September 29, 2021, PHH was in possession of a complete or facially complete loss mitigation application as to the Loan.[2]

61.     As of September 29, 2021, Jennifer had dutifully performed her obligations pursuant to the Trial Plan.

62.     After wrongfully failing to effectuate Jennifer's payment per the Trial Plan, PHH through the October 28, 2021 correspondence, promised that if Jennifer remitted payment of $2,699.76 to PHH on or before November 30, 2021, that the Trial Plan would be honored. *See*, Exhibit 3.

---

[2] The Official CFPB Interpretationst to 12 C.F.R. § 1024.41(a) provides as follows as to what constitutes a loss mitigation application for purposes of RESPA:

> 2.  When an inquiry or prequalification request becomes an application. A servicer is encouraged to provide borrowers with information about loss mitigation programs. **If in giving information to the borrower, the borrower expresses an interest in applying for a loss mitigation option and provides information the servicer would evaluate in connection with a loss mitigation application, the borrower's inquiry or prequalification request has become a loss mitigation application. A loss mitigation application is considered expansively and includes any "prequalification" for a loss mitigation option**. For example, if a borrower requests that a servicer determine if the borrower is "prequalified" for a loss mitigation program by evaluating the borrower against preliminary criteria to determine eligibility for a loss mitigation option, the request constitutes a loss mitigation application.

Supplement I to Part 1024 (emphasis added); *see also*, Necak v. Select Portfolio Servicing, Inc., No. 1:17 CV 1473, 2019 U.S. Dist. LEXIS 71147, at *17-18 (N.D. Ohio Apr. 26, 2019) (finding that a borrower who was prequalified for a Streamline Trial Plan pursuant to HAMP, accepted such trial plan, and remitted payments thereunder, had submitted a loss mitigation application and triggered the protections of Regulation X and RESPA).

63. At no point did Jennifer fail to perform pursuant to the Trial Plan or reject all loss mitigation options available, including the Trial Plan.

64. Even if PHH sent proper notice of their denial of the Trial Plan for Jennifer's alleged failure to perform, Jennifer properly appealed such denial and the October 28, 2021 correspondence effectively rescinded the Denial as Jennifer dutifully performed on her obligations pursuant to such correspondence. *See*, Exhibits 3 and 4.

65. Despite the foregoing, and despite Jennifer having until November 30, 2021 to satisfy the terms of the Trial Plan, on or about November 11, 2021, USBNA acting at the behest of, on the advice of, or at the direction of PHH, through Clunk, filed a renewed Motion for Default Judgement against the Crewses in violation of the "dual-tracking" prohibitions of 12 C.F.R. § 1024.41(g).

66. PHH's actions in moving or otherwise permitting, instructing, or advising USBNA to move for default judgment on November 11, 2021 were in violation of 12 C.F.R. § 1024.41(g) and 12 U.S.C. § 2605(k)(1)(E) and, as a result, Jennifer has suffered actual damages as detailed, *supra*, including but not limited to additional and continued harm to her credit standing, a delay in the rehabilitation of her credit, improper fees, and significant emotional distress.

67. PHH's actions are part of a pattern and practice of behavior in conscious disregard for Jennifer's rights.

68. PHH's conduct as pled, *supra*, shows a conscious disregard for Jennifer's rights.

69. As a result of PHH's actions, PHH is liable to Jennifer for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

70.     Additionally, Jennifer requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO: VIOLATION OF THE EFTA, 15 U.S.C. § 1693,** *et seq.*
**(Failure to make an electronic transfer of funds as properly instructed)**

71.     The Crewses restate and incorporate all of their statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

72.     PHH, as the direct or indirect holder of the Loan account, is a "financial institution" as defined by 15 U.S.C. § 1693a(9).

73.     The Chime Account is an "account" as defined by 15 U.S.C. § 1693a(2) as it is an account established and used primarily for personal, family, or household purposes and the Crewses have used the Chime Account on multiple occasions for the remittance of payments towards the Loan through PHH.

74.     The attempted Trial Plan payment on September 29, 2021 was an "electronic fund transfer" as defined by 15 U.S.C. § 1693a(7) as it was initiated via telephone authorizing PHH to debit the Chime Account for the Trial Plan payment.

75.     PHH failed to make the electronic fund transfer for the attempted Trial Plan payment on September 29, 2021, despite being properly instructed to do so by the Crewses, by failing to remit the payment through the correct account number for the Chime Account. *See*, Exhibit 3. *See also*, 15 U.S.C. § 1693h(a)(1).

76.     PHH 's actions in failing to make the electronic fund transfer for the attempted Trial Plan payment on September 29, 2021 constitutes violation of the EFTA for which PHH is liable for actual damages caused pursuant to 15 U.S.C. § 1693h(a), and, as a result, Jennifer has suffered

actual damages as detailed, *supra*, including but not limited to the loss of the opportunity to complete the Trial Plan and obtain a permanent modification of the Loan, additional and continued harm to her credit standing, a delay in the rehabilitation of her credit, improper fees, and significant emotional distress.

77.     As a result of PHH's actions, PHH is liable to Jennifer for statutory damages and actual damages as further described, *supra*. 15 U.S.C. §§ 1693m(a)(1)-(2).

78.     Additionally, Jennifer requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1693m(a)(3).

## COUNT THREE: VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.*

79.     The Crewses restate and incorporate all of their statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten herein.

80.     "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

81.     PHH, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

82.     PHH is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it multiple certificates of registration, License Nos. RM.804016.000, RM.804016.001-BR through RM 804016.001-28-BR, RM.803985.000, and RM.803985.001-BR through RM.803985.004-BR.

83.     The Crewses are each a buyer, as their Mortgage is serviced by PHH, a mortgage servicer. R.C. 1322.01(H).

84.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.* cannot "[e]ngage in conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. 1322.40(C).

85.     PHH's conduct in, *inter alia*, wrongfully failing to effectuate the Trial Plan payment on September 29, 2021, improperly claiming Jennifer failed to fulfill her obligations under the Trial Plan, in "dual-tracking" the Loan by moving for default judgment on November 11, 2021, by failing to accept the Crewses' payment of $2,700.00 in satisfaction of Jennifer's obligations under the Trial Plan and in accordance with PHH's instructions via the October 28, 2021 correspondence, and in subsequently charging improper fees and charges to the Loan, constitute violations of R.C. 1322.40(C).

86.     PHH's conduct caused the Crewses each to suffer actual damages, as further described, *supra*.

87.     As a result of PHH's conduct, PHH is liable to the Crewses for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

88.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

> (3) Act with reasonable skill, care, and diligence; [and]
> (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

89.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

90.     PHH's conduct in, *inter alia*, wrongfully failing to effectuate the Trial Plan payment on September 29, 2021, improperly claiming Jennifer failed to fulfill her obligations under the Trial Plan, in "dual-tracking" the Loan by moving for default judgment on November 11, 2021, by failing to accept the Crewses' payment of $2,700.00 in satisfaction of Jennifer's obligations under the Trial Plan and in accordance with PHH's instructions via the October 28, 2021 correspondence, and in subsequently charging improper fees and charges to the Loan, constitutes violations of R.C. 1322.45(A)(3)-(4).

91.     As a result of PHH's conduct, PHH is liable to Plaintiff for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jennifer Crews prays that this Court grant judgment against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing, and award her the following:

A.      An award for actual damages from Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing in an amount to be determined at trial for the allegations contained in Count One;

B.   An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing for each violation of RESPA contained in Count One;

C.   An award of reasonable attorneys' fees and costs as to Count One; and,

D.   For such other relief which this Court may deem appropriate.

**WHEREFORE**, Plaintiffs Jennifer Crews and Shawn Crews pray that this Court grant judgment against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing, and award them the following:

E.   An award for actual damages from Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing in an amount to be determined at trial for the allegations contained in Counts Two and Three;

F.   An award of statutory damages of One Thousand Dollars ($1,000.00) from Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing for the violation of the EFTA contained in Count Two;

G.   Punitive damages against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Servicing as to the violations of the RMLA as contained in Count Three;

H.   An award of reasonable attorneys' fees and costs as to Counts Two and Three; and,

I.   For such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/ *Marc E. Dann, Esq.*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Brian D. Flick, Esq. (0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Jennifer and Shawn Crews*

## JURY DEMAND

Plaintiffs Jennifer Crews and Shawn Crews hereby respectfully demand a trial by jury on all such claims that may be so tried.

/s/ *Marc E. Dann, Esq.*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Brian D. Flick, Esq. (0081605)
DannLaw
*Counsel for Plaintiffs Jennifer and Shawn Crews*